Whitaker, Judge,
delivered the opinion of the court:
In her petition plaintiff has alleged that the United States, acting in accordance with an Act of Congress, which plaintiff alleges is unconstitutional, has taken her property in violation of the Fifth Amendment to the Constitution, for which she is seeking a judgment against the United States in the amount of $200,675.05, with interest. The case is before the court on defendant’s motion to dismiss the petition, or, in the alternative, for summary judgment. The motion is grounded on ten defenses, as stated in defendant’s brief, the first of which is that “the court lacks jurisdiction to entertain the suit or enter judgment against the United States.”
Plaintiff’s decedent, it is alleged, had some 114,000 Russian rubles on deposit in the Russo-Asiatie Bank in Petrograd, Russia. He was also the endorsee or assignee of a draft of the Bank drawn in 1910 for 100,000 rubles directed to a Rus *615 sian office of the Bank, but the office to which it was directed could not be found. On September 18,1918, he drew a check for 72,000 rubles on his account in the Bank. The check was dishonored. Then, on August 22,1927, he brought an action in the Supreme Court of the State of New York against the Bank for the amount of the check and the amount of the draft. He obtained service by levying an attachment on funds originally deposited by the Bank in the Guaranty Trust Company and the National City Bank, both of New York City. Later, this action was removed to the United States District Court for the Eastern District of New York.
On June 26,1928, that court entered an order vacating the attachment, upon the representation of the law firm of Evarts, Choate, Sherman & Leon, of New York, that they represented the Bank and would accept service for it and enter their appearance in the action, thereby rendering the attachment unnecessary. Plaintiff’s attorney consented thereto, upon the faith of said representations. Later, after the case had been remanded to the Supreme Court of the State of New York, the Russo-Asiatic Bank obtained an ex parte order in that court, vacating the August 22,1927 attachment and all liens thereunder (as of June 26, 1928), said order being later affirmed by the New York Court of Appeals.
After the Court of Appeals of New York, in the case of Issaia v. Russo-Asiatic Bank, et al., 266 N.Y. 37, 193 N.E. 543 (1934), had decided that the law firm of Evarts, Choate, Sherman & Leon had no authority to appear for the Bank in an action involving assets of the Bank in the State of New York (their appointment by French and Chinese liquidators of the Bank having no extraterritorial effect), plaintiff brought an action in the Supreme Court of the State of New York to set aside the former order vacating the attachment. The Supreme Court of the State of New York did set it aside nunc pro time as of November 26, 1927. This order was entered on July 13, 1935. Subsequently, on December 23, 1935, the Supreme Court entered a default judgment against the Bank for $210,675.05.
Plaintiff then brought an action under section 943 of the Civil Practice Act of New York seeking to reduce to possession the property attached. However, the court held that *616 this remedy was barred by the statute of limitations, and this holding was affirmed by the Court of Appeals of New York in Tillman v. National City Bank & Guaranty Trust Co., 276 N.Y. 663, 13 N.E. 2d 52 (1938).
In the meantime, this Government had entered into an agreement with the Union of Soviet Socialist Republics, known as the “Litvinov Assignment”, under which this Government recognized the Union of Soviet Socialist Republics as the lawful Government of Russia, and under which that Government assigned to the United States all of its assets and the assets of its nationals located in the United States, for the benefit of American nationals who had claims against the Union of Soviet Socialist Republics or its nationals.
Following this, Congress, by the International Claims Settlement Act of 1949, 64 Stat. 12, as amended, 22 U.S.C. §§1621-1627 (1958), established the International Claims Commission, in the Department of State. Section 305 (a) and (b) of the Act, added by 69 Stat. 572 (1955), 22 U.S.C. §1641d (a) and (b) (1958) provides, in part:
Sec. 305. (a) The Commission shall receive and determine in accordance with applicable substantive law, including international law, the validity and amounts of—
(1) claims of nationals of the United States against a Russian national originally accruing in favor of a national of the United States with respect to which a judgment was entered in, or a warrant of attachment issued from, any court of the United States or of a State of the United States in favor of a national of the United States, with which judgment or warrant of attachment a lien was obtained by a national of the United States, prior to November 16, 1933, upon any property in the United States which has been taken, collected, recovered, or liquidated by the Government of the United States pursuant to the Litvinov Assignment. Awards under this paragraph shall not exceed the proceeds of such property as may have been subject to the lien of the judgment or attachment; nor, in the event that such proceeds are less than the aggregate amount of all valid claims so related to the same property, exceed an amount equal to the proportion which each such claim bears to the total amount of such proceeds; and
*617 (2) claims, arising prior to November 16, 1933, of nationals of the United States against the Soviet Government.
(b) Any judgment entered in any court of the United States or of a State of the United States shall be binding upon the Commission in its determination, under paragraph (1) of subsection (a) of this section, of any issue which was determined by the court in which the judgment was entered.
Pursuant thereto, plaintiff filed a claim with the International Claims Commission, based upon the above mentioned default judgment.[1] The Commission requested her to produce evidence of the origin of her claim, and the name of the person in whose favor the claim originally arose, and all subsequent owners and their nationality, and how and when the claim against the Bank arose. The plaintiff did not comply with the Commission’s request; whereupon, she was notified that the Commission proposed to enter an adverse decision, to which proposed decision the plaintiff then filed objections. After a hearing, the Commission, on October 9, 1956, issued an order stating that it would affirm its proposed decision unless the claimant within ten days established that the claim originally arose, in whole or in part, in favor of a national of the United States, and that a valid attachment lien was obtained prior to November 16,1933, the date of the Litvinov Assignment. On November 14,1956, the Commission rendered its final decision affirming its proposed decision, on the ground that the claimant had failed to establish the statutory prerequisites as provided in section 305 of the Act, for the determination of “claims of nationals of the United States against a Bussian national originally accruing in favor of a national of the United States with respect to which a judgment was entered in, or a warrant of attachment issued from, any court of the United States or of a State of the United States in favor of a national of the United States * *
*618 Section 314 of the International Claims Settlement Act of 1949, as amended, supra, (22 U.S.C. § 1641m) provides:
Seo. 314. The action of the Commission in allowing or denying any claim under this title shall be final and conclusive on all questions of law and fact and not subject to review by any other official of the United States or by any court by mandamus or otherwise, and the Comptroller General shall allow credit in the accounts of any certifying or disbursing officer for payments in accordance with such action.
Thus, section 314 expressly makes final and conclusive the action of the Commission “on all questions of law and fact”, and expressly says that its action is “not subject to review by any other official of the United States, or by any court by mandamus or otherwise.” The International Claims Commission was the forum established by Congress for determination of the claims of our nationals against funds in this country formerly belonging to Russian nationals and nationalized by the Soviet Government. Congress, of course, had a right to confer jurisdiction for the determination of such claims on a commission, a court, or any other agency it might choose, and it had a right to make the decision of such a commission final and conclusive, thereby depriving the courts of any jurisdiction to review them. By virtue of that section it is plain that this court has no jurisdiction to entertain plaintiff’s claim.
This is the end of the matter if the funds of the Russo-Asiatic Bank in this country passed into the hands of the Russian Government, by virtue of the decree of December 21, 1917 nationalizing all banks in Russia prior to the Litvinov Assignment.
In the case of United States v. Pink, 315 U.S. 203 (1942), it was held that by virtue of the nationalization decrees of the Russian Government, the balance of the assets of a New York branch of a Russian insurance corporation became vested in the Russian Government, and that the rights of the Russian Government therein passed to the United States under the Litvinov Assignment. The principle of that case governs here. The funds of the Russo-Asiatic Bank, therefore, were covered by the Litvinov Assignment.
This claim came into the hands of the United States free *619 of the lien of attachment secured by plaintiff in 1927 against the alleged funds of the Russo-Asiatic Bank in the Guaranty Trust Company and the National City Bank, and also free of the lien of the default judgment entered on December 23, 1935 by the Supreme Court of New York. This is true because our recognition of the Union of Soviet Socialist Republics on November 16,1933, dated back to the inception of that Government on December 27, 1917, and validated all actions and conduct of the Government so recognized from the beginning of its existence. United States v. Belmont, 301 U.S. 324 (1937), and United States v. Pink, supra.
So that, at the time the attachment was issued, the funds that had belonged to the Russo-Asiatic Bank, and which were then in the Guaranty Trust Company and National City Bank, had become the funds of the Union of Soviet Socialist Republics by virtue of the nationalization decrees. Since the Soviet Government was not made a party to plaintiff’s action in the Supreme Court of New York, if that could have been done in any event, the attachment issued against these funds was ineffective as against the right to them asserted by the Soviet Government, and the rights of the Soviet Government in them were assigned to the United States under the Litvinov Assignment. It results that the United States took those funds free of the lien of the attachment and judgment obtained by plaintiff.
The decision of the International Claims Commission was a valid and final adjudication of plaintiff’s rights. The Act establishing this Commission no more constitutes a taking of plaintiff’s property than would an Act conferring jurisdiction on this court to determine such claims. The Litvinov Assignment did not constitute a taking of plaintiff’s property because this did nothing more than assign to the United States whatever rights the Soviet Government acquired by virtue of its nationalization decrees. It was not the United States that took anything from plaintiff, but the Russian Government.
Defendant’s motion to dismiss is granted, and plaintiff’s petition is dismissed.
Davis, Judge, did not participate in the consideration and decision of this case.

 Tie functions of the International Claims Commission were transferred to the Foreign Claims Settlement Commission on July 1, 1954, pursuant to Reorganization Plan No. 1 of 1954, 19 Fed. Reg. 3985, 68 Stat. 1279. Any reference to the International Claims Commission shall be understood to refer to the Foreign Claims Settlement Commission as to any matters occurring after July 1,1954.